■ MICHAEL A. JACOBS et al., Individually and as Shareholders of the First National Bank of Downsville, Appellants, v ALAN R. GLADSTONE, Individually and as President of the First National Bank of Downsville, and as Executor of MARVIN BULL, Deceased, et al., Respondents. (Action No. 1.) In the Matter of the Estate of MARVIN H. BULL, Deceased. BUNTLINE LAND & DEVELOPMENT, INC., et al., Appellants; ALAN R. GLADSTONE, as Executor of MARVIN H. BULL, Deceased, Respondent. (Action No. 2.) BUNTLINE LAND & DEVELOPMENT, INC., Appellant, v ARLENE J. ROWE, Respondent. (Action No. 3.) — Appeal, in Action No. 1, from an order of the Supreme Court at Special Term (Keane, J.), entered February 17, 1981 in Delaware County, which denied plaintiffs' motion to disqualify the law firm of Paternoster, Estes & O'Leary from further representation of any party to the action. Appeals, in Action No. 2, from four orders of the Surrogate's Court of Delaware County (Keane, S.), entered February 13, 1981, which, *inter alia,* dismissed the petition in a derivative action brought pursuant to section 623 of the Not-For-Profit Corporation Law. Appeal, in Action No. 3, from an order of the Supreme Court at Special Term (Keane, J.), entered February 17, 1981 in Delaware County, which denied plaintiff's motion for summary judgment and for disqualification of the law firm of Paternoster, Estes & O'Leary from further representation of any party to the action. The facts which gave rise to the instant proceedings have to do with an attempt to obtain control of stock of the First National Bank of Downsville (hereinafter bank) by a faction led by Michael Jacobs and one led by Alan Gladstone, executor of the will of Marvin Bull, the former president of the bank who left 431 shares of bank stock to the Delaware Valley Hospital (hereinafter hospital). A derivative action (Action No. 2) was brought by Buntline Land & Development, Inc. and other stockholders of the hospital to challenge the action of the hospital's board of directors and their acquiescence to the sale of bank stock bequeathed to the hospital at a lower than market price. The court dismissed the derivative action finding that it was unnecessary and that the hospital's interests were adequately protected by its counsel and by the Attorney-General who appeared in the action. Thereafter, the court denied (1) petitioners' motion to remove Gladstone as executor; (2) petitioners' motion for consolidation of the stockholders' derivative action with a proceeding for an accounting brought by Gladstone as executor, and (3) petitioners' motion for disqualification of the law firm of Paternoster, Estes & O'Leary which was simultaneously representing Gladstone, the bank and Arlene J.

Rowe, the defendant in Action No. 3, to whom stock of the bank was transferred below the market value of the stock. The court found that petitioners lacked standing to pursue such relief in view of its dismissal of the derivative action. The documents in support of the derivative cause of action indicate that petitioners seek relief pursuant to section 623 of the Not-For-Profit Corporation Law. They allege that they constitute 5% of the corporation's certificate holders. Their petition states with sufficient particularity the allegedly harmful measures taken by the board of directors of the hospital. It is alleged that the directors failed to contest the executor's self-dealing and/or conflict of interest in that he has transferred stock to himself at a lower price than that being paid on the open market. It is further alleged that Gladstone has wasted assets committed to his care. It is alleged, also, that he is about to dispose of the assets of the hospital at less than their true market value despite bona fide offers to purchase the bank stock for a significantly higher price and that the board is aware of the situation. We deem such a petition to be facially sufficient. The Surrogate's Court thus erred in dismissing the petition (Isaac v Marcus, 258 NY 257). Members of a domestic not-for-profit corporation are authorized by statute to bring actions to prevent or remedy a wrong to the corporation when the corporation fails or refuses to take appropriate action for its own benefit (Not-For-Profit Corporation Law, § 623). The fact that the corporation is adequately represented by its own counsel cannot be set up as a bar to a derivative action brought by stockholders. Such representation must be deemed to be adverse to that of the interests of the stockholder. The appearance of the Attorney-General in the action also does not serve to preclude petitioners from litigating these proceedings on their own account. Based on such an analysis of the central motion in these proceedings, we conclude that the Surrogate erred in dismissing the derivative action. We also hold that the court properly denied petitioners' motion for summary removal of the executor. Though normally an executor cannot sell to himself the property of an estate, such transaction is permissible if consented to by the beneficiary who had knowledge of all material facts which the trustee knew or should have known. Here, Gladstone has raised a triable issue of fact as to consent and ratification by the beneficiary of the transfer of stock to himself. We conclude, too, that the court did not err in denying petitioners' motion to consolidate the derivative action with the executor's accounting proceeding. We view the two matters as being essentially distinct. In the accounting proceeding, the question of self-dealing is at issue. In the derivative action, the stockholders are suing their corporation for lost profits. Even though the executor might be found blameless in the one proceeding, shareholders might still prevail against a corporation for accepting offers below market value. We, therefore, conclude that the consolidation sought by petitioners would be inappropriate. We are also of the opinion that the orders denying the motions to disqualify counsel from representing various parties to these appeals are also correct. The law firm of Paternoster, Estes & O'Leary represents Gladstone, the executor of the estate, defendant Rowe, to whom stock was allegedly transferred by Gladstone in violation of a temporary restraining order, and the bank. The papers in support of the motions for disqualification fail to show that Gladstone breached his duty of loyalty to the beneficiary. The interests of all the parties are essentially similar and, therefore, we find no conflict of interest in their representation by one law firm. Special Term also denied plaintiff Buntline's motion for summary judgment in its declaratory judgment action against defendant Rowe (Action No. 3), which motion was based on Rowe's admission that she purchased the bank stock on a date postdating a March 9, 1979 temporary restraining order issued by the court forbidding the transfer of the

disputed stock by Gladstone.[*] Gladstone's testimony, however, indicates that actual payment for the stock occurred prior to the March 9, 1979 order. Thus, a triable issue exists and summary judgment was properly denied. Order, in Action No. 1, affirmed, without costs. Order, in Action No. 2, which dismissed petitioners' petition brought pursuant to section 623 of the Not-For-Profit Corporation Law, reversed, on the law, without costs, petition reinstated, and matter remitted to the Surrogate's Court of Delaware County for further proceedings not inconsistent herewith; other orders in Action No. 2 affirmed, without costs. Order, in Action No. 3, affirmed, without costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Herlihy, JJ., concur.

---

[*] The temporary restraining order was contained in an order to show cause obtained by plaintiffs in Action No. 1, which was an action by Michael Jacobs and Buntline against Gladstone and the bank to permanently enjoin the sale or transfer of the disputed stock.